CONFEDERATED TRIBES OF SILETZ INDIANS OF OREGON, Plaintiff–Appellee,

v.

STATE OF OREGON; Oregon State Police Department; R.J. Sitton, Lieutenant, Oregon State Police Tribal Gaming Unit, Defendants–Appellants.

No. 96–36027.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1997.

Decided April 24, 1998.

**482**

Michael D. Reynolds, Assistant Solicitor General, Salem, Oregon, for defendants-appellants.

Craig J. Dorsay, Portland, Oregon, for plaintiff-appellee.

Before: NOONAN and HAWKINS, Circuit Judges, and MERHIGE,* District Judge.

MICHAEL DALY HAWKINS, Circuit Judge:

## OVERVIEW

The State of Oregon ("Oregon") appeals the district court's summary judgment grant

* Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

in favor of the Confederated Tribes of Siletz Indians in the Tribe's action under the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701–2721, enjoining Oregon from public release of a state investigative report concerning the Chinook Winds gambling casino. We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Congress passed the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701–2721, "to provide a statutory basis for the operation and regulation of gaming by Indian tribes." *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 48, 116 S.Ct. 1114, 1119, 134 L.Ed.2d 252 (1996). Under IGRA, gaming is divided into three classes: I, II and III. Class III gaming, the type at issue here, is the most strictly regulated of the three.[1] Class III gaming may be conducted on Indian lands if: (1) authorized by the tribe seeking to conduct the gaming; (2) located in a State which does not bar such gaming; and (3) "conducted in conformance with a Tribal–State compact entered into by the Indian tribe and the State...." 25 U.S.C. § 2710(d).

In 1994, the Confederated Tribes of Siletz Indians of Oregon ("Siletz Tribe" or "Tribe")[2] and Oregon negotiated a Tribal–State Compact ("Compact") for the regulation of class III gaming on the Siletz reservation[3] at a site known as the Chinook Winds Gaming and Convention Center ("Chinook Winds"), located within Lincoln City, Oregon.[4]

Among other things, the Compact authorizes Oregon to monitor and investigate Chinook Winds to ensure compliance with the Compact:

1. *Monitoring.* The State is authorized hereby to monitor the Tribal gaming operation to ensure that the operation is conducted in compliance with the provisions of this Compact.... The State shall have free and unrestricted access to all areas of the Gaming Facility during the normal operating hours without giving prior notice to the Tribal Gaming operation.

2. *Access to Records.* The State is hereby authorized to review and copy, during normal business hours, and upon reasonable notice, all records maintained by the Tribal gaming operation; provided, that any documents containing financial information, proprietary ideas, plans, methods, data development, inventions or other proprietary information regarding the gambling enterprise of the Tribe, games conducted by the Tribe, or the operation thereof provided to the State by the Tribe, any copy thereof and any information derived therefrom shall be deemed confidential and proprietary financial information of the Tribe and is hereby acknowledged by the State to have been submitted to the State by the Tribe voluntarily and in confidence, and with the expectation that the records will be regarded as confidential. The State agrees that the disclosure of such documents shall be protected to the extent provided under ORS 192.410 to 192.505. Any records or copies removed from the premises shall be returned to the Tribe after use. Nothing in this subsection precludes the State or the Tribe from disclosing information subject to an appropriate judicial order under the Rules of Civil Procedure or Evidence

1. Class III gaming "includes such things as slot machines, casino games, banking card games, dog racing, and lotteries." *Seminole,* 517 U.S. at 48, 116 S.Ct. at 1119.

2. The Siletz Tribe is a federally recognized Indian tribe, restored to federally recognized status in 1977. Pub.L. No. 95–195, 91 Stat. 1415, Nov. 18, 1977, as amended 25 U.S.C. § 711.

3. The Tribe's reservation land was taken into trust as restored reservation land on April 17,

1995, pursuant to Public Law No. 103–435, 108 Stat. 4567 (Nov. 2, 1994).

4. The Compact was executed by the Tribe and Oregon on November 14, 1994 and approved by the Secretary of the Department of the Interior (the "Secretary") on March 14, 1995. An amendment to the Compact was executed by the parties on October 27, 1995, and approved by the Secretary on January 19, 1996.

in connection with litigation, a prosecution or a criminal investigation.

3. *Investigation Reports.* After completion of any inspection or investigation report, the State shall provide a copy of the report to the Tribal Gaming Commission.

Pursuant to this section of the Compact, Oregon's State Police Tribal Gaming Unit conducted an investigation of Chinook Winds and generated a report of that investigation dated April 17, 1996 (the "Report"). Soon thereafter, legal counsel for the Governor of Oregon informed the Siletz Tribe and its attorney that a proper request had been made for a copy of the Report and that the Governor believed Oregon was required to release the Report under Oregon's Public Records Laws ("Records Laws"), Or.Rev. Stat. §§ 192.410–192.505 (1996).

The Siletz Tribe protested the proposed release and, when it and Oregon could not reach a settlement, filed an action in the United States District Court for the District of Oregon to prevent its release. The Tribe and Oregon stipulated to the entry of a preliminary injunction pending a full disposition of the issues. Both parties moved for summary judgment, and the district court entered summary judgment for the Tribe enjoining release of any records generated by Oregon in exercise of its authority under the IGRA.

Relying on *Seminole,* 517 U.S. 44, 116 S.Ct. 1114, and *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980), the district court found that, under the Indian Commerce Clause, U.S. Const. Art. I, § 8, cl. 3., and IGRA, Oregon's authority over the Tribe was limited to "the application of the criminal and civil laws and regulations of the Indian tribe or the State that are directly related to, and necessary for, the licensing and regulation of such [gaming] activity." *See* 25 U.S.C. § 2710(d)(3)(C).

After determining that the information contained in the Report "is appropriately characterized as on-reservation conduct involving only Indians," the district court concluded that, under *White Mountain,* "neither IGRA nor the Compact authorizes [Oregon]

to apply the [Public] Records Laws to a report discussing the operation of Chinook Winds by the Tribe which is generated, in part, from information provided by the Tribe pursuant to the terms of the Compact."

## STANDARDS OF REVIEW

A summary judgment grant is reviewed de novo. *See Covey v. Hollydale Mobilehome Estates,* 116 F.3d 830, 834 (9th Cir.1997). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See id.* at 834. The district court's findings of fact supporting its judgment are reviewed under the clearly erroneous standard. *See Adler v. Federal Rep. of Nig.,* 107 F.3d 720, 729 (9th Cir.1997).

The interpretation and meaning of contract provisions are questions of law reviewed de novo. *See HS Servs., Inc. v. Nationwide Mut. Ins. Co.,* 109 F.3d 642, 644 (9th Cir. 1997). The district court's interpretation of a statute is also reviewed de novo. *See Pinal Creek Group v. Newmont Mining Corp.,* 118 F.3d 1298, 1300 (9th Cir.1997).

## ANALYSIS

### I. Release of the Report

■ The Tribe argues that the federal government has exclusive authority over Indian affairs and that no state law can apply to Indian activities on Indian lands unless Congress has expressly made that law applicable. According to the Tribe's argument, IGRA provides for the application of state laws and regulations directly related to class III gaming, but not for the application of state laws unrelated to Indian gaming, such as the Oregon Public Records Laws. Because the Tribe did not agree to a release of such reports in the Compact, Oregon's proposed application of its Records Laws to the Report is preempted by federal law.

We are not persuaded that a preemption analysis is necessary here. Rather, we look to the Compact itself. The Tribe correctly contends that the Compact, a direct result of

federal authority granted through IGRA, serves as the basis for any analysis of federal preemption. Without either IGRA or the Compact, there would be simply no question of federal law at stake. Contrary to the Tribe's argument, however, the Report's discussion of Indian gaming does not make Oregon's control of that report ipso facto a regulation of the Tribe. Nor does the generation of the Report under an IGRA-sponsored Compact necessarily make control of that document a matter of federal law.

■ In our view, the Compact itself controls. To the extent the Compact specifically permits or prohibits the release of the Report, the parties are bound by it. Where the Compact is silent, however, neither IGRA, the Indian Commerce Clause, nor any other federal law prevents Oregon from releasing the Report.[5]

The Compact deals expressly with the application of Records Laws: "[Oregon] agrees that the disclosure of [the records maintained by the Tribal gaming operation] shall be protected to the extent provided under ORS 192.410 to 192.505." The Tribe relies on the absence of any explicit statement regarding its agreement to this point, suggesting this shows that the Tribe did not accept this provision.[6] We are not persuaded. Because the Compact calls for the application of Oregon contract law, we must enforce this unambiguous contract provision according to its terms, see *Pacific First Bank v. New Morgan Park Corp.*, 319 Or. 342, 876 P.2d 761, 764 (1994), and it clearly calls for the application of the Records Laws.

On its terms, the Compact applies the Records Laws to certain Tribal records; it does not specifically say that the Records Laws apply to the Report as well. Indeed, the Compact is silent as to the public release of the Report or the applicability of the

Oregon Public Records Laws to the Report. The Compact only provides that Oregon "shall provide a *copy* of the report to the Tribal Gaming Commission." (emphasis added). This provision, however, does not specifically prohibit any other release of the Report. Rather, the use of the word "copy" seems to assume that Oregon will maintain control over the original Report and treat it as it would any other state record.

Nothing in the Compact, or in any other legal authority, prohibits Oregon from releasing the Report. Once compiled, a copy of the Report must be given to the Tribal Gaming Commission. Whatever else Oregon does with the Report, as is consistent with state law and the terms of the Compact, is permissible. In this case, supplying a copy of the Report to the media, either pursuant to or independent of the Records Laws, does not violate the Compact.

Accordingly, we reverse the district court and grant summary judgment in favor of Oregon. Although we believe the case can be disposed of through simple contract interpretation, we nonetheless address the parties' preemption arguments to explain why a preemption analysis is inappropriate here.

## II. Preemption of State Public Records Law

### A. *Indian Law and Preemption Generally*

"Congress has broad power to regulate tribal affairs under the Indian Commerce Clause, Art. 1, § 8, cl. 3." *White Mountain*, 448 U.S. at 142, 100 S.Ct. at 2583 (citation omitted). The Supreme Court has made clear that this federal authority, combined with the "semi-independent position" of the tribes, creates two barriers to the exercise of state authority over tribal reservations and

---

5. Congress has limited the information a state may release to the public regarding certain Indian affairs, see 16 U.S.C. § 470hh(b) (protecting confidentiality of information regarding Indian artifacts), as well as other areas of the law. *See, e.g.,* 47 U.S.C. § 551(c) (cable subscribers); 5 U.S.C. § 552(b)(4) (trade secrets); and 35 U.S.C. § 122 (patent applications). IGRA contains no such provision regarding the confidentiality of information relating to Indian gaming.

6. If the Siletz Tribe is correct, and IGRA precludes Oregon from releasing any document or potential report pursuant to the Public Records Laws, this confidentiality agreement would be unnecessary as there would be no need to distinguish between confidential and non-confidential material. Indeed, that the Compact contains this agreement seems to indicate that the parties presumed some documents/reports would be released to the public.

members: (1) preemption by federal law; and (2) infringement on tribal autonomy. Either basis, "standing alone, can be a sufficient basis for holding state law inapplicable to activity undertaken on the reservation or by tribal members." *Id.* at 143, 100 S.Ct. at 2583.

■ "In determining whether federal law preempts a state's authority to regulate activities on tribal lands, courts must apply standards different from those applied in other areas of federal preemption." *Cabazon Band of Mission Indians v. Wilson,* 37 F.3d 430, 433 (9th Cir.1994). "State jurisdiction is preempted by the operation of federal law if it interferes or is incompatible with federal law, unless the state interests at stake are sufficient to justify the assertion of state authority." *New Mexico v. Mescalero Apache Tribe,* 462 U.S. 324, 334, 103 S.Ct. 2378, 2386, 76 L.Ed.2d 611 (1983). Thus, "in the Indian law context, state law is preempted not only by an explicit congressional statement—but also if the balance of federal, state and tribal interests tips in favor of preemption." *Gila River Indian Community v. Waddell,* 91 F.3d 1232, 1236 (9th Cir.1996) (citations and quotation omitted).[7] Moreover, "ambiguities in federal law are resolved in favor of tribal independence." *Cabazon,* 37 F.3d at 434.

Thus, the Court has "rejected the proposition that in order to find a particular state law to have been preempted by operation of federal law, an express congressional statement is required." *White Mountain,* 448 U.S. at 144, 100 S.Ct. at 2584. Nonetheless, the state's interest must be given weight as the Indian tribes do not have an automatic exemption from state law. *See id.*

■ Out of these competing interests, the Supreme Court established a balancing test

in *White Mountain.* For conduct involving non-tribal members, a court must weigh the state, federal, and tribal interests at stake to determine "whether, in the specific context, the exercise of state authority would violate federal law." *Id.* at 145, 100 S.Ct. at 2584. However:

[w]hen on-reservation conduct involving only Indians is at issue, state law is generally inapplicable, for the State's regulatory interest is likely to be minimal and the federal interest in encouraging tribal self-government is at its strongest.

*Id.* at 144, 100 S.Ct. at 2584.

### B. The District Court's Preemption Analysis

■ In granting summary judgment to the Tribe, the district court found that the "information contained in the report relates to the operation of the Chinook Winds, which is appropriately characterized as on-reservation conduct involving only Indians." Applying the *White Mountain* preemption test, the district court dismissed Oregon's interest as minimal compared to the Siletz Tribe's "well-recognized and long upheld interests in keeping information relating to tribal business within the confines of the tribe." Without any further discussion of the interplay between IGRA and the various federal, state, and tribal interests, the district court held that Oregon Public Records Laws were preempted.

We reject the district court's analysis for two reasons. First, we dispute the district court's finding that the conduct at issue here involves only tribal members involved in on-reservation conduct. While the Report covers only on-reservation matters, it discusses

---

7. The Siletz Tribe argues that this balancing test is not applicable under IGRA. According to the Tribe, in passing IGRA, Congress made it clear that the statute expressly preempts the entire field of Indian gaming:

[IGRA] is intended to expressly preempt the field in the governance of gaming activities on Indian lands. Consequently, Federal courts should not balance competing Federal, State, and tribal interests to determine the extent to which various gaming activities are allowed.

S. REP. No. 444, 100th Cong., 2d Sess., 5, 6 (1988), reprinted at 1988 U.S.CODE CONG. & ADMIN. NEWS, 3071, 3076. The Tribe's argument should be rejected, however, as the application of Oregon law here has no effect on the determination "of which gaming activities are allowed." In addition, this court has previously applied a preemption balancing test to IGRA. *See Cabazon,* 37 F.3d 430.

a gaming enterprise which is used by large numbers of non-tribal members.[8]

Second, because this case concerns the application of a state statute unrelated to Indian gaming, we question whether *White Mountain* preemption applies at all. Preemption generally applies in Indian law where the application of state law "interferes or is incompatible with federal or tribal interests as reflected in federal law." *Cabazon*, 37 F.3d at 433. It is unclear how the Oregon Public Records Laws interfere or are incompatible with IGRA.[9] The Records Laws do not seek to usurp tribal control over gaming nor do they threaten to undercut federal authority over Indian gaming. To be sure, the Records Laws could have a detrimental effect on the Siletz Tribe if the Report contained damaging information on the operation of the Chinook Winds casino and the release of that Report would cause a decline in business. That possibility, however, is fully consistent with IGRA's goal of fair and honest gaming. *See* 25 U.S.C. § 2702(2).

Rather than apply the *White Mountain* preemption test in this case, we conclude that preemption does not apply here at all because Oregon's Records Laws are not related to IGRA.

REVERSED AND REMANDED.

---

8. Although the record does not provide precise numbers on member/non-member usage of Chinook Winds, it seems likely that outsiders provide most of the money spent at the casino.

9. According to the declaration of policy section contained in IGRA, the purpose of the act is:

(1) to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments;

(2) to provide a statutory basis for the regulation of gaming by an Indian tribe adequate to shield it from organized crime and other corrupting influences, to ensure that the tribe is the primary beneficiary of the gaming operation, and to assure that gaming is conducted fairly and honestly by both the operator and players; and

(3) to declare that the establishment of independent Federal regulatory authority for gaming on Indian lands, the establishment of Federal standards for gaming on Indian lands, and the establishment of a National Indian Gaming Commission are necessary to meet congressional concerns regarding gaming and to protect such gaming as a means of generating tribal revenue.

25 U.S.C. § 2702 (1988).