Filed 9/1/23  Stuart v. Cannavino CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| BRUCE STUART, as Trustee, etc.,<br><br>   Plaintiff and Appellant,<br><br>v.<br><br>JAMES CANNAVINO et al.,<br><br>   Defendants and Respondents. | E078327, E078827<br><br>(Super. Ct. No. PSC1804352)<br><br>**ORDER MODIFYING OPINION**<br>[NO CHANGE IN JUDGMENT] |

The opinion filed in this matter on August 28, 2023, is modified as follows:

On page 2, first paragraph last sentence, the word "inhabitable" should be "uninhabitable." The sentence should read as follows: "After escrow closed, however, the Riverside County Building and Safety Department "red tagged" the apartments as uninhabitable because of extensive code violations and safety hazards."

Except for this modification, the opinion remains unchanged. This modification does not effect a change in the judgment.

1

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:

RAPHAEL
J.

MENETREZ
J.

Filed 8/28/23  Stuart v. Cannavino CA4/2 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| BRUCE STUART, as Trustee, etc., | |
| Plaintiff and Appellant, | E078327, E078827 |
| v. | (Super. Ct. No. PSC1804352) |
| JAMES CANNAVINO et al., | OPINION |
| Defendants and Respondents. | |

APPEALS from the Superior Court of Riverside County.  Lawrence W. Fry, and David M. Chapman, Judges.  Reversed.

Allen Matkins Leck Gamble Mallory & Natsis, Alan D. Hearty, and Alexander J. Doherty, for Plaintiff and Appellant.

Horvitz & Levy and Mitchell C. Tilner; Carlson Law Group, Mark C. Carlson and Jose A. Mendoza, for Defendants and Respondents.

1

# I.

## INTRODUCTION

Bruce F. Stuart bought a $2.495 million equestrian property with barns that had been converted into seemingly luxurious "apartments." After escrow closed, however, the Riverside County Building and Safety Department "red tagged" the apartments as inhabitable because of extensive code violations and safety hazards.

Stuart then sued the sellers for intentional and negligent misrepresentation, fraud, and breach of contract. The trial court granted summary judgment to the sellers, awarded them attorney's fees, and entered judgment in their favor. Stuart timely appealed. We reverse the judgment and remand for further proceedings.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

James Cannavino and his wife, Elma Garcia Cannavino, along with their LLC, RPKMA, LLC, whose only members are James and Elma, bought a 10-acre equestrian estate in Thermal, California (the property).[1] The property had several structures, including barns that had been converted into two "apartments."

The Cannavinos gradually remodeled the property, including the barn apartments. They kept only the "bones" of the apartments and extensively remodeled the rest. Among other things, the Cannavinos installed new fixtures and appliances, wood

---

[1] Another person bought the property with the Cannavinos, but they later bought out that person's interest.

flooring, and a home theater. The Cannavinos hired Elma's relative, Lance Schley, to help with the renovations. Schley was not licensed as a contractor in California at the time but had been a licensed contractor in New Jersey and Arizona for over 40 years.

The Cannavinos eventually decided to sell the property, so they hired Kimberley Kelly as their real estate agent to help with the sale. Shortly after, James executed a listing agreement with Kelly for the sale of the property. When executing the agreement, James told Kelly that no permits had been obtained for the work on the property, including on the barn apartments. Schley told Kelly the same.

To help sell the property, Kelly hired a media company to create a marketing video. Elma, who has experience working on television commercials, directed the video and was "heavily involved" in its production. The video provided a tour of the property, including the barn apartments, which were called the "primary home" and the "guest apartment casita." The video described the barn apartments as "two completely remodeled and modernized [] apartments, that could easily be added onto; each offering full kitchens and bathrooms, and even a Theater Room!"

A family member told Stuart about Kelly's listing of the property. Stuart viewed the marketing video and other materials and scheduled a tour with Kelly. Stuart was very impressed with the property, especially the barn apartments. He was also so impressed with Kelly that he accepted her offer to serve as a dual agent representing him and the Cannavinos in a potential sale of the property.

3

At Kelly's advice, Stuart offered to buy the property at its $2,495,000 asking price. The Cannavinos accepted the offer.

Stuart then executed various forms as part of the purchase. First, he executed a "Vacant Land Purchase Agreement." Paragraph 14 of the purchase agreement stated the Cannavinos would disclose to Stuart any "adverse conditions materially affecting the Property" that they learned of during escrow. It also provided that the Cannavinos would amend their disclosures if they learned of "any material inaccuracy" and would notify Stuart of the amendment. Paragraph 16 stated the property was being sold "AS-IS" and "strongly advised" Stuart to inspect the property to confirm its condition. The provision continued, "Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued."

Stuart also submitted an addendum to the purchase agreement requesting, among other things, "'any and all available documentation of improvements to land and structures to buyer and any permits or documents substantiating that code requirements have been met.'" The Cannavinos did not provide any of the requested documentation because they never got permits and had no documents proving that code requirements had been met. The Cannavinos also never represented to Stuart that they had obtained permits for any of the work done to the property.

Stuart also executed a Buyer's Inspection Advisory (BIA). The first line of the form stated, "The physical condition of the land and improvements being purchased is

4

not guaranteed by either Sellers or Brokers.  You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation."  Paragraph 3 of the BIA stated, "**YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING . . .  [¶]  . . .  [¶]  I. BUILDING PERMITS**."

Stuart also executed a "Statewide Buyer and Seller Advisory" (SBSA) form as part of the purchase agreement.  Paragraph 18 of the form said, "**BUILDING PERMITS, ZONING AND CODE COMPLIANCE:**  Buyer and Seller are advised that any structure on the Property, including the original structure and any addition, modification, remodel or improvement may have been built without permits, not according to building codes, or in violation of zoning laws. . . .  Buyer is advised to check with appropriate government agencies or third party professionals to verify permits and legal requirements and the effect of such requirements on current and future use of the Property, its development and size."

Finally, Stuart and the Cannavinos executed an Agent Visual Inspection Disclosure (AVID).  The form said that the "'Barn apartments were remodeled from existing structures, requiring no permits per [S]eller.'"  The form advised Stuart "'to do all inspections and due diligence to satisfy [himself] as to any and all specifics pertaining

5

to this property prior to close of escrow.'" Stuart, however, performed no independent inspection of the property before escrow closed.

The Cannavinos also filled out and submitted to Stuart a Seller Vacant Land Questionnaire (SVLQ). Paragraph 29 asked the Cannavinos to explain any structures or improvements on the property. The Cannavinos replied, "2 Apartments." Paragraph 47 in the SVLQ asked the Cannavinos to identify "[a]ny past or present known material facts or other significant items affecting the value or desirability of the Property not otherwise disclosed to Buyer." The Cannavinos checked the box for "No."

Two weeks after escrow closed, James let an inspector from the Riverside County Building and Safety Department onto the property to investigate a complaint. After inspecting the property and interviewing James, the inspector closed the case as unfounded.

About eight months later, Stuart agreed to sell the property to his nephew, Joseph Stuart. Joseph hired a contractor to build a swimming pool, but the County denied the application for a permit to build the pool because there were no permitted residences on the property. Joseph then learned that the barn apartments did not have certificates of occupancy, which were required for anyone to reside on the property.

While living on the property, Joseph began to experience serious problems with the barn apartments. There were significant problems with the air conditioner, the electrical system, and the plumbing. The larger barn apartment's roof leaked every time

it rained. Black mold began growing throughout both apartments. The problems were so severe that Joseph rescinded the purchase from Stuart and moved out.

The problems with the property persisted and worsened. Stuart hired a contractor to inspect the property, and he claimed he had "rarely, if ever" seen a property with so many code violations. The County eventually reinspected the property, found that it was a public nuisance, and gave Stuart 30 days to make it code-compliant. The inspector also put a "red tag" on the barn apartments, declaring them unsafe. The inspector's report stated, "All structures on this property are unsafe, do not enter, licensed contractor may enter to remove personal belongings." The County eventually concluded that all of the structures on the property could not be remedied and had to be demolished.

Stuart then sued the Cannavinos, Kelly, and her real estate company. In his operative Second Amended Complaint (SAC), Stuart asserted four claims against the Cannavinos for (1) fraudulent misrepresentation (sixth cause of action), (2) negligent misrepresentation (seventh cause of action), (3) fraudulent concealment (eighth cause of action), and (4) breach of contract (ninth cause of action). Stuart sought various damages for his claims, including actual and punitive damages.

The misrepresentation claims alleged the Cannavinos falsely or negligently represented to Stuart that "that the [p]roperty had two [a]partments that were intended to be used as residences" even though they knew the apartments "were not habitable and had not been constructed with the required permits, and did not have certificates of occupancy."

7

Stuart's fraudulent concealment claim similarly alleged that the Cannavinos intentionally failed to disclose that the apartments were unpermitted residential structures, did not have certificates of occupancy, and were constructed without the required permits from the County, and that the property's irrigation system was unpermitted.

Finally, Stuart alleged in his breach of contract claim that the Cannavinos breached the purchase agreement by "failing to disclose known material facts and defects affecting the [p]roperty" and by failing "to provide subsequent and/or amended disclosures of the County of Riverside's investigation of the complaint filed against the [p]roperty" as required by the purchase agreement.

The trial court granted the Cannavinos' motion for summary judgment, denied as moot their motion for summary adjudication on Stuart's request for punitive damages, and entered judgment in their favor, and Stuart timely appealed the judgment. The trial court then granted in part the Cannavinos' motion for attorney's fees, awarding them about $165,000 in fees and costs. Stuart timely appealed that order, and we consolidated his appeals.

## III.

## DISCUSSION

Stuart argues the trial court erroneously granted the Cannavinos' motion for summary judgment because the motion did not address all of his theories of liability and, regardless, the motion fails on the merits. He argues we should deny the Cannavinos'

motion for punitive damages and reverse the order awarding them attorney's fees and costs. We agree.

A. *Summary Judgment Principles and Standard of Review*

"A party moving for summary judgment bears the burden of persuasion there is no triable issue of material fact and is entitled to judgment as a matter of law. A defendant satisfies this burden by showing one or more elements of the cause of action in question cannot be established or there is a complete defense to that cause of action. If the defendant meets this initial burden, the opposing party must then make a prima facie showing of the existence of a triable issue of material fact. [Citation.] [¶] We review the denial of a motion for summary judgment de novo. [Citation.] We strictly construe the moving party's affidavits and liberally construe the opposing party's affidavits. We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence." (*City of San Diego v. Superior Court* (2006) 137 Cal.App.4th 21, 25.) Thus, "[w]hen deciding whether to grant summary judgment, the court must consider all of the evidence set forth in the papers (except evidence to which the court has sustained an objection), as well as all reasonable inferences that may be drawn from that evidence, in the light most favorable to the party opposing summary judgment." (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 467.)

B.  *Misrepresentation Claims*

Stuart's misrepresentation claims are based on three theories of liability:  (1) the barn apartments' lack of permits, (2) their lack of a certificate of occupancy, and (3) their physical uninhabitability.  In their motion for summary judgment/summary adjudication of the misrepresentation claims, however, the Cannavinos addressed only the permitting issue.  They argued only that the claims failed because they disclosed to Stuart that they never obtained permits for any work done on the property.

The Cannavinos do not dispute that their motion did not address Stuart's two remaining theories of liability regarding the lack of a certificate of occupancy and the physical and legal uninhabitability of the barn apartments.  They instead argue the claims still fail because they never represented anything to Stuart while reiterating that they disclosed to him that the barn apartments had been remodeled without permits.  They also argue the claims fail because they are based on an implied representation that the barn apartments had a certificate of occupancy because an implied representation cannot support a negligent misrepresentation claim.

But "the pleadings always define the issues" that a summary judgment/adjudication motion must address.  (*Hejmadi v. AMFAC, Inc.* (1988) 202 Cal.App.3d 525, 536.)  A motion for summary adjudication on a cause of action may be granted "only if it completely disposes of [the] cause of action."  (Code Civ. Proc., § 437c, subd. (f)(1).)  A defendant moving for summary adjudication of a cause of action with multiple sufficiently pled theories of liability therefore must address all of them.

10

(*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 163.) If the moving defendant does not do so, the motion must be denied. (*Id*. at pp. 161-162; *Cates v. California Gambling Control Commission* (2007) 154 Cal.App.4th 1302, 1310.)

Because the Cannavinos' summary judgment motion failed to address two of Stuart's theories of liability underlying his misrepresentation claims, they failed to meet their "initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) As a result, they were not entitled to summary adjudication of Stuart's misrepresentation claims. (*Ibid*.; see also *Jameson v. Desta* (2013) 215 Cal.App.4th 1144, 1165.) We therefore reverse the judgment and the trial court's order granting the Cannavinos summary adjudication of Stuart's misrepresentation claims.

C. *Fraudulent Concealment Claim*

Stuart's fraudulent concealment claim alleged the Cannavinos fraudulently failed to disclose various material facts about the property, including that (1) the barn apartments were unpermitted, (2) did not have certificates of occupancy, (3) and were uninhabitable, and (4) the irrigation system lacked permitting. Stuart acknowledges that the Cannavinos' motion addressed the first two issues, but contends it did not address the irrigation system or the "unsafe nature" of the barn apartments.

The Cannavinos counter that they addressed both issues "by presenting evidence" on them, in particular evidence that they disclosed that all work on the property may have been done without permits and may not be code-compliant. That may be, but their

11

*motion* and separate statement of undisputed facts did not properly address either the irrigation permitting or habitability issues.  In moving for summary adjudication on Stuart's fraudulent concealment claim, the Cannavinos only argued the claim failed because they did not conceal that the barn apartments were unpermitted and did not have certificates of occupancy.

The Cannavinos' motion thus did not address Stuart's allegations about the unpermitted irrigation system or that the barn apartments were physically uninhabitable because they were unsafe.  By failing to address these allegations, the Cannavinos failed to meet their initial burden in moving for summary adjudication on Stuart's fraudulent concealment claim.  (See *Jameson v. Desta*, *supra*, 215 Cal.App.4th at p. 1165.)  The trial court thus erred by granting them summary adjudication on the claim.  (See *Hawkins v. Wilton* (2006) 144 Cal.App.4th 936, 945 [because summary judgment motion did not negate all theories of employer liability, "the trial court should have held that [the defendant] failed to carry his initial burden and stopped there"].)

D.  *Breach of Contract Claim*

Stuart's breach of contract claim alleges the Cannavinos breached the purchase agreement by failing to disclose material facts adversely affecting the property, including that (1) the barn apartments were unpermitted, (2) they did not have certificates of

12

occupancy, (3) they were uninhabitable, (4) the irrigation system lacked permits, and (5) the County inspected the property after receiving a complaint about it.[2]

The Cannavinos' motion, however, addressed only the barn apartments' lack of permits and certificates of occupancy and the County inspection issue. The Cannavinos implicitly recognize this deficiency by addressing only these issues in their respondents' brief. But because the Cannavinos did not address all of Stuart's theories as to how they breached the purchase agreement, they were not entitled to summary adjudication on Stuart's breach of contract claim. (See *Jameson v. Desta*, *supra*, 215 Cal.App.4th at p. 1165; *Hawkins v. Wilton*, *supra*, 144 Cal.App.4th at p. 945.)

E. *Request for Punitive Damages*

After finding the Cannavinos were entitled to summary adjudication on all of Stuart's claims, the trial court found the Cannavinos' motion for summary adjudication on Stuart's request for punitive damages was moot. Because we conclude the Cannavinos were not entitled to summary adjudication on Stuart's intentional misrepresentation and fraudulent concealment claims, the issue of punitive damages is no longer moot.

The Cannavinos argue we should remand for the trial court to consider and rule on their motion for summary adjudication on Stuart's request for punitive damages. Stuart, on the other hand, asks us to decide the issue and deny the motion. We believe the

---

[2] On appeal, Stuart abandoned his argument that the Cannavinos breached the purchase agreement by failing to disclose facts about the County inspection.

13

appropriate course is for the trial court to decide the issue in the first instance on remand. (See *Planet Bingo LLC v. Burlington Insurance Co.* (2021) 62 Cal.App.5th 44, 58.)

F.  *Fee Award*

Because we reverse the judgment, we also reverse the fee award and the Cannavinos' request for appellate fees.  (See *Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1053.)

## IV.

## DISPOSITION

The judgment is reversed.  The matter is remanded to the trial court with instructions to enter an order denying the Cannavinos summary judgment and denying them summary adjudication on Stuart's sixth through ninth causes of action.  The order awarding the Cannavinos attorney's fees and costs is reversed.  Stuart may recover his costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:

RAPHAEL
J.

MENETREZ
J.

14