Filed 4/30/13  Kidane v. El Cajon Motors CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ALEM KIDANE,<br><br>　　　　Plaintiff and Appellant,<br><br>　　v.<br><br>EL CAJON MOTORS,<br><br>　　　　Defendant and Respondent. | D058707<br><br><br><br>(Super. Ct. No. 37-2009-00093327-CU-WT-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Joan M. Lewis and Timothy B. Taylor, Judges.  Affirmed.


This action arose when defendant El Cajon Motors (El Cajon Ford) terminated plaintiff Alem Kidane's employment as a salesperson after Kidane made criminal threats against another employee, was arrested for this behavior and lied about the matter during El Cajon Ford's internal investigation.  Kidane, a naturalized United States citizen born in East Africa, sued El Cajon Ford, alleging five causes of action under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) for (1) racial discrimination, alleging he was terminated on the basis of his race; (2) racial harassment, alleging El Cajon Ford failed to take reasonable

steps to prevent his coworkers, Jim Veneman and Jeremy Bodger, from harassing him on account of his race; (3) national origin/ancestry discrimination, alleging he was terminated on the basis of his national origin and ancestry; (4) national origin/ancestry harassment, alleging El Cajon Ford failed to take reasonable steps to prevent Veneman and Bodger from harassing him on account of his national origin and ancestry; and (5) wrongful termination in violation of public policy, alleging El Cajon Ford's termination of his employment on account of his race and/or national origin and ancestry violated public policy.  Kidane also alleged causes of action for (6) intentional infliction of emotional distress and (7) failure to pay wages due when his employment was terminated (Lab. Code, § 201 et seq.).

The jury returned special verdicts in favor of El Cajon Ford on all causes of action, finding (1) with respect to Kidane's claims he was terminated on account of his race or national origin, that Kidane's race and national origin were *not* motivating reasons for his discharge; (2) with respect to Kidane's claims El Cajon Ford failed to take reasonable steps to prevent him from being subjected to harassment on account of his race and/or national origin, that El Cajon Ford "fail[ed] to take reasonable steps to prevent the harassment," but Kidane was not harmed; (3) with respect to Kidane's claim of intentional infliction of emotional distress, that El Cajon Ford's conduct was not outrageous; and (4) with respect to Kidane's claim El Cajon Ford failed to pay him wages due when it terminated his employment, that El Cajon Ford did *not* "willfully fail to pay the full amount of wages earned by [Kidane] on his last day of employment."

Kidane appeals in propria persona, contending (1) the court erred by not allowing his counsel to ask El Cajon Ford's human resources employee, C.S., during discovery and at trial whether she had been raped by a Black man 18 years earlier; (2) the court erred in allowing the

2

defense during trial to amend its answer, which had pleaded a statute of limitations defense under Code of Civil Procedure section "340" to Kidane's seventh cause of action for unpaid wages, to assert a statute of limitations defense to that cause of action under Code of Civil Procedure section "340[, *subdivision*] (*a*)," italics added; (3) the evidence is insufficient to support the jury's verdicts on the failure-to-prevent-harassment and unpaid-wages claims; and (4) the court erred in awarding costs and attorney fees to El Cajon Ford.

We conclude the court acted within its discretion in not allowing Kidane's counsel to ask C.S. during discovery and at trial whether she had been raped by a Black man 18 years earlier. Assuming, without deciding, that the court erred by allowing El Cajon Ford to amend its answer to plead its statute of limitations defense to the unpaid-wages claim under section 340, *subdivision* (*a*), rather than section 340 (with no reference to any specific subdivision), of the Code of Civil Procedure, we conclude Kidane has failed to show any such error was prejudicial, as the jury's special verdict in favor of El Cajon Ford regarding the unpaid-wages claim shows the jury did not reach the merits of the statute of limitations defense. We also conclude Kidane has forfeited his insufficiency-of-the-evidence claims. Last, we conclude the award of attorney fees and other costs in favor of El Cajon Ford must be affirmed because Kidane has failed to present the record of the proceedings on which those awards are based, thereby preventing any meaningful appellate review of his claim of error. Accordingly, we affirm the judgment.

FACTUAL BACKGROUND[1]

Kidane started working as a salesman at El Cajon Ford in late May 2004. A couple of months later, he met his coworker, Veneman.

El Cajon Ford used personnel software called the Compli Human Resources System, which permitted El Cajon Ford and its employees to log vacations and perform other human resources functions and facilitated the filing and processing of discrimination and harassment complaints. The system was password protected, and El Cajon Ford's human resources staffer, C.S., administered it. She was responsible for helping employees resolve any problems they might have accessing the system.

Veneman testified he and Kidane developed a friendship at El Cajon Ford and became good friends. Paul Dyke, the general sales manager and a part owner of El Cajon Ford, regularly heard Kidane and Veneman exchanging jokes, including some with racial overtones. Veneman commented on Kidane's food and referred to Kidane as a "spear chucker." Kidane would sometimes ask Veneman, who was a Southerner born in West Virginia, whether he ate "road kill" or "squirrel nuts" and whether his sister was also his aunt. Since the joking between Kidane and Veneman was mutual, Dyke saw no need to take any action. Dyke testified he had a very good relationship with Kidane, who would have told Dyke if he was offended by Veneman's remarks. At trial, Veneman confirmed the joking was mutual and gave additional examples of jokes Kidane made about him.

---

[1] As Kidane's recitation of the evidence presented at trial is substantially incomplete and largely unsupported by citations to the record as required by rule 8.204(a)(1)(C) of the California Rules of Court (all further rule references are to the California Rules of Court), and (for reasons we shall discuss, *post*) he has forfeited his insufficiency-of-the-evidence claims, our summary of the facts is brief.

Other employees reported that the relationship between Kidane and Veneman was friendly. According to John Blake, the controller, sales representative David Pluth stated that Kidane and Veneman engaged in a lot of horseplay at work. Andrew Yousif, who worked in the special financing department, said that Kidane and Veneman jokingly made fun of one another. At trial, Yousif recounted how Veneman and Kidane would swap race-based insults and laugh at them. Thomas Sturgill, a former El Cajon Ford salesman who had worked with Kidane there, also testified he saw Kidane and Veneman joking around numerous times.

Kidane presented a different account of his relationship with Veneman. According to Kidane, Veneman used offensive language around him from the start, asking him whether he lived in trees or ate "zebra nuts." Kidane acknowledged, however, that he did not tell Veneman to stop because he thought Veneman was joking.

Kidane denied making any comments or jokes to Veneman in 2006 about Veneman's origins or the foods he ate. Kidane stated he eventually told Veneman to stop and that he reported Veneman to his immediate supervisor, who did nothing. According to Kidane, Veneman referred to himself as a "grand poo-bah," and Kidane's supervisor explained this term meant a white supremacist. Veneman, however, testified Kidane never showed any anger over how Veneman talked with him, and he never asked Veneman to stop.

The antics between Kidane and Veneman at El Cajon Ford were also physical. Kidane testified that one day, after Veneman made racist comments, Kidane told him to shut his mouth, and Veneman pulled a knife on him. However, Veneman contradicted Kidane's version of the incident and denied that he pulled a knife on Kidane.

5

C.S. testified she once saw Kidane grab Veneman's crotch. Ronald Ratigan, the used car manager, testified he saw Kidane slap Veneman on the buttocks on several occasions, and Veneman would laugh and jokingly make a gesture of coming after Kidane with a cane.

The trial evidence showed that Kidane's employment at El Cajon Ford ended as a result of his behavior toward Jeremy Bodger. Bodger testified he had just quit working at El Cajon Ford when, on March 1, 2008, he came to El Cajon Ford to pick up his sales license. While there, he saw some former customers who were currently being helped by salesman Pluth. Bodger briefly talked with them. Bodger testified that salesmen ordinarily are not supposed to talk with other salesmen's customers, and Pluth complained to Kidane about Bodger's speaking with Pluth's customers. According to Bodger, Kidane came up to him, asked him why the "f" he was talking to Pluth's customers, and threatened to kill him. Bodger called 911 and reported the threat. A police officer arrived shortly thereafter, spoke with both Bodger and Kidane, and told Bodger that if he wanted to arrest Kidane, he would have to make a citizen's arrest. Bodger decided to leave El Cajon Ford without his license.

Kidane later telephoned Bodger, indicating he was at Bodger's residence, and he was there to kill him. Bodger called the sheriff's department, and sheriff's deputies discovered the threatening call came from a phone registered to Kidane.

Later, Bodger went back to El Cajon Ford, met with C.S., and told her what had happened. C.S. logged Bodger into their human resources system to file a complaint about Kidane's behavior. Bodger obtained a temporary restraining order against Kidane.

6

Dyke testified he later called Kidane into Blake's office and Blake and Dyke asked him whether he had called Bodger and threatened him. Blake took notes. Kidane assured Dyke and Blake that he did not call or threaten Bodger.

On March 17, 2008, police came to El Cajon Ford and arrested Kidane there. A detective testified that he confronted Kidane with Bodger's telephone records, and Kidane acknowledged he called Bodger from his home phone. Bodger was not the only person Kidane threatened. Kidane's former coworker, Sturgill, testified that Kidane once threatened to shoot him and slit his throat.

On March 25, 2008, after he was released from jail, Kidane returned to El Cajon Ford to ask whether he could return to work. Dyke testified that he and Blake met with Kidane. During the meeting, Kidane admitted that had he lied about making the phone call and about threatening Bodger. Dyke decided he needed to terminate Kidane's employment because Kidane had lied during the investigation.[2]

## DISCUSSION

### I. *DENIAL OF DISCOVERY*

Kidane first contends the court erred by not allowing his counsel to ask El Cajon Ford's human resources employee during discovery and at trial whether she had been raped by a Black man 18 years earlier.

We reject this contention.

---

[2] Because we shall conclude Kidane has forfeited his claim that the evidence is insufficient to support the jury's verdict in favor of El Cajon Ford on his unpaid-wage claim, we need not, and do not, summarize the voluminous evidence pertaining to that claim.

7

A. *Background*

On appeal, Kidane asserts he "had heard that [C.S.] had been raped by a [B]lack man, and had a child as a result of that rape, and as a result she held a racial animus towards [B]lack men." The record shows the following exchange occurred between his counsel and C.S. during her deposition:

"[Kidane's counsel:] Your daughter, is she half [B]lack?

"[C.S.:] Yes.

"[Kidane's counsel:] You've never been married to her father?

"[C.S.:] No.

[¶] . . . [¶]

"[Kidane's counsel:] Do you know where he lives?

"[C.S.:] No.

"[Kidane's counsel:] When was the last time you saw him?

"[C.S.:] Eighteen years ago.

"[Kidane's counsel:] Before your daughter's birth?

"[C.S.:] Correct.

"[Kidane's counsel:] Any communications with him?

"[C.S.:] No.

"[Kidane's counsel:] *Did he rape you*?

"[Defense counsel:] Don't answer the question. [¶] Counsel, are you serious? Are you going to ask that question?

"[Kidane's counsel:] Yes.

"[Defense counsel:] Don't answer the question. Invades the right to privacy. It's not relevant. It's not going to lead to admissible evidence.

"[Kidane's counsel:] This is a—what I believe is a black person that raped her, unfortunately, and I believe it affects her state of mind as to black people.

"[Defense counsel:] Well, I think you're unprofessional. I'm going to say it on the record. I hope you bring this in front of a court because I think you'll be sanctioned for this conduct.

"[Kidane's counsel:] I will bring it in front of the court." (Italics added.)

In his motion to compel C.S. to answer whether she had been raped by a Black man 18 years in the past, Kidane asserted that "[a] significant issue in this case is whether [C.S.] used her position of responsibility and authority at El Cajon Ford to discriminate against [him] based on race and national origin," and "when she holds that rape against Black employees such as [himself], that constitutes a violation of the law." Kidane also asserted that he was "entitled to know what motivation or background she may have that causes her to be discriminatory against Black employees, and as part of discovery [he] is entitled to know whether or not she was raped by a Black man."

In its opposition to Kidane's motion to compel, El Cajon Ford argued that the questions asked of C.S. were "highly offensive," not relevant to the litgation in this matter and invaded her right to privacy and "[t]here [was] no evidence . . . that [C.S.] had anything to do with the decision to terminate [Kidane]."

In its June 11, 2010, minute order, the court[3] denied Kidane's motion to compel, stating: "[Kidane] sought to inquire of the witness whether she had been raped by her daughter's father.

---

3      The Honorable Joan M. Lewis.

9

The Court finds this line of questioning to be outside the bounds of appropriate discovery and will not permit any questioning in this regard."

This issue was raised again when the defense asserted in a motion in limine that, "[a]lthough the court denied [Kidane's] motion to compel a response to this question by the deponent [C.S.], El Cajon Ford believes a motion in limine is appropriate to ensure that [Kidane] does not ask such a question at trial . . . ."  The court[4] granted the in limine motion, stating:  "The court has reviewed the minutes of Judge Lewis'[s] ruling precluding inquiry into this matter, and forbids any counsel from making any reference to this alleged issue at any time in this trial."

B.  *Standard of Review*

In *Cates v. California Gambling Control Com.* (2007) 154 Cal.App.4th 1302, (*Cates*) this court explained that "[i]t is well settled that an appellate court reviews the ruling of the trial court, not its rationale, and may affirm a trial court ruling on any proper basis presented by the record, whether or not relied upon by the trial court.  [Citations.]  We review a discovery order for an abuse of discretion and will affirm the ruling unless it falls outside the bounds of reason.  [Citation.]  This deferential standard of review requires us to uphold the trial court's determination, even if we disagree with it, so long as it is within reason.  [Citation.]  Furthermore, the order is presumed correct and the appellant must affirmatively show error."  (*Id*. at p. 1312.)

Thus, as the appellant in this matter, Kidane has the burden of overcoming the presumption that the court correctly denied his motion to compel and correctly granted El

---

4    The Honorable Timothy B. Taylor.

Cajon Ford's in limine motion, and we must affirm those rulings unless Kidane affirmatively demonstrates they fall outside the bounds of reason. (See *Cates*, *supra*, 154 Cal.App.4th at p. 1312.)

C. *Analysis*

"The constitutional right of sexual privacy, both within and without the marital relationship, is a fundamental liberty arising from both the United States and the California Constitutions." (*Boler v. Superior Court* (1987) 201 Cal.App.3d 467, 473.) "Like other aspects of the right of privacy, such as associational privacy and the privacy of personal bank records, the right of sexual privacy may be asserted by a litigant by refusing to answer questions which 'unreasonably intrude' on the right." (*Ibid*.) The right to sexual privacy "is not absolute, and disclosure may be compelled in court proceedings; disclosure is only justified, however, if the sought after disclosure would serve the compelling state interest of the facilitation of truth in legal proceedings. The party seeking court-ordered discovery must shoulder this heavy burden, and must establish more than 'merely . . . a rational relationship to some colorable state interest.' " (*Ibid*.) "[C]ourts must balance the right of civil litigants to discover relevant facts against the privacy interests of persons subject to discovery." (*Vinson v. Superior Court* (1987) 43 Cal.3d 833, 842.)

Here, Kidane's deposition questions to C.S. about whether she had been raped by a Black man 18 years earlier, which defense counsel directed her not to answer, intruded upon her sexual privacy.

We conclude Kidane has failed to meet his heavy burden of overcoming the legal presumption that the court's rulings barring him from intruding into C.S.'s constitutionally

11

protected right to sexual privacy were correct. C.S. was not a named defendant in this matter. Kidane has made no showing that C.S. was involved in the decision to terminate his employment, which substantial evidence in the trial record shows was based upon the fact that he made criminal threats against another employee, he was arrested for this behavior and he lied about the matter during El Cajon Ford's internal investigation. Even if the testimony Kidane sought to elicit from C.S. was relevant to some material issue in this case, the alleged 18-year-old sexual assault was so remote in time that any evidence of such an assault would have been excludable under Evidence Code section 352.[5] We conclude Kidane has failed to show the court's rulings constitute an abuse of its legal discretion.

## II. *STATUTE OF LIMITATIONS PLEADING AMENDMENT*

Kidane also contends the court erred in allowing the defense during trial to amend its answer, which had pleaded a statute of limitations defense under Code of Civil Procedure section "340" to Kidane's seventh cause of action for unpaid wages, to assert a statute of limitations defense to that cause of action under Code of Civil Procedure section "340[, subdivision] (a)." This contention is unavailing.

### A. *Background*

As pertinent here, El Cajon Ford's answer to Kidane's complaint asserted the affirmative defense that the seventh cause of action for failure to pay wages due (Lab. Code, § 201 et seq.) was "barred by the statute of limitations including . . . Code of Civil Procedure [section] . . . 340."

---

5    Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

12

On October 20, 2010, at the end of the trial before the plaintiff rested his case, the court granted hiss request to amend his unpaid-wages claim according to proof and also granted El Cajon Ford's motion to amend its answer to correct a "technical pleading defect in [its] affirmative defense" to that claim. The court's minute order states: "The court grants [El Cajon Ford's] motion to amend to conform to proof, and deems the affirmative defense as having asserted [Code of Civil Procedure] section 340[, *subdivision*] (*a*)." (Italics added.)

B. *Analysis*

As Kidane points out, Code of Civil Procedure section 340 has five different subdivisions. (See *id.*, subds. (a)-(e).) The five subdivisions delineate different types of actions, but the same one-year limitations period applies with respect to each category of action. (See *ibid.*) Code of Civil Procedure section 340, subdivision (a), for example, provides: "Within one year: [¶] (a) An action upon a statute for a penalty or forfeiture, if the action is given to an individual, or to an individual and the state, except if the statute imposing it prescribes a different limitation."

Kidane complains that El Cajon Ford "failed to allege which subdivision of [Code of Civil Procedure] Section 340 it was reliant upon. Accordingly, [El Cajon Ford] is precluded from asserting [Code of Civil Procedure] Section 340, subdivision (a) as an affirmative defense."

We shall assume, without deciding, that the court erred by allowing El Cajon Ford to amend its answer to plead its statute of limitations defense to the seventh cause of action under section 340, *subdivision* (*a*), rather than section 340 (with no reference to any specific subdivision), of the Code of Civil Procedure.

13

We conclude Kidane has failed to show any such error was prejudicial because the jury's special verdict in favor of El Cajon Ford regarding that unpaid-wages claim shows the jury never reached the merits of El Cajon Ford's statute of limitations defense. Specifically, the special verdict form shows the jury answered, "No," to the question, "Did El Cajon Ford willfully fail to pay the full amount of wages earned by . . . Kidane on his last day of employment?" This finding in favor of El Cajon Ford was dispositive. The last question on the same special verdict form asked, "Did . . . Kidane file his lawsuit within one year of the date of his last paycheck?" The jury did not answer either "Yes" or "No" with respect to this question, but was not required to do so because it had already reached its dispositive verdict in favor of El Cajon Ford with respect to the merits of Kidane's unpaid-wage claim. Thus, Kidane has not shown, and cannot demonstrate, the court's assumed error was prejudicial to him.

### III. *SUFFICIENCY OF THE EVIDENCE*

Next, Kidane contends the evidence is insufficient to support the jury's verdicts in favor of El Cajon Ford on his failure-to-prevent-harassment and unpaid-wages claims. We conclude Kidane has forfeited these insufficiency-of-the-evidence claims.

A. *Standard of Review*

In assessing a challenge to the sufficiency of the evidence supporting a judgment, we apply the substantial evidence rule. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632.) "If the trial court's resolution of the factual issue is supported by substantial evidence, it must be affirmed." (*Ibid.*)

14

Under the substantial evidence standard of review, we review the entire record to determine whether substantial evidence supports the jury's factual determinations (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874), viewing the evidence and resolving all evidentiary conflicts in favor of the prevailing party and indulging all reasonable inferences to uphold the judgment (*Jordan v. City of Santa Barbara* (1996) 46 Cal.App.4th 1245, 1254-1255). The issue is not whether there is evidence in the record to support a different finding, but whether there is some evidence that, if believed, would support the findings of the trier of fact. (*Rupf v. Yan* (2000) 85 Cal.App.4th 411, 429, fn. 5, 430.) Credibility is an issue of fact for the trier of fact to resolve. (*Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 622.) The testimony of a single witness is sufficient to provide substantial evidence to support a factual finding. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.)

B. *Analysis*

We are mindful that Kidane is representing himself on appeal. However, his status as a party appearing in propria persona does not provide a basis for preferential consideration. "A party proceeding in propria persona 'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' [Citation.] Indeed, ' "the in propria persona litigant is held to the same restrictive rules of procedure as an attorney." ' " (*First American Title Co. v. Mirzaian* (2003) 108 Cal.App.4th 956, 958, fn. 1.)

Under the rules, the parties are required to "[s]upport any reference to a matter in the record" with "a citation to the volume and page number of the record where the matter appears." (Rule 8.204(a)(1)(C).) "[I]t is [a litigant's] duty to point out portions of the record that support the position taken on appeal. The appellate court is not required to search the

15

record on its own seeking error." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768 (*Del Real*).) Furthermore, "[a] violation of the rules of court may result in the striking of the offending document, the waiver of the arguments made therein, the imposition of fines and/or the dismissal of the appeal." (*Ibid.*) Thus, if a party fails to support a particular point or argument with the necessary citations to the record, we may deem it forfeited. (*Ibid.*; accord, *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 (*Nwosu*) [applying former rule 14(a)(1)(C)]; *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 (*Duarte*); *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115 (*Guthrey*).)

Here, as already noted (see fn. 1, *ante*), Kidane's recitation of the evidence presented at trial is substantially incomplete and largely unsupported by citations to the record as required by rule 8.204(a)(1)(C). Kidane also fails to support with citations to the record most of the specific factual assertions on which his insufficiency-of-the-evidence claims are based. Accordingly, we conclude he has forfeited these claims. (See *Nwosu, supra,* 122 Cal.App.4th at p. 1246; *Del Real*, *supra*, 95 Cal.App.4th at p. 768; *Duarte*, *supra*, 72 Cal.App.4th at p. 856; *Guthrey*, *supra*, 63 Cal.App.4th at p. 1115.)

IV. *ATTORNEY FEES AND OTHER COSTS*

Last, Kidane contends the court erred in awarding costs and attorney fees to El Cajon Ford. We conclude the challenged award must be affirmed because Kidane has failed to present the record of the proceedings on which those awards are based, thereby preventing any meaningful review of his claim.

16

A. *Background*

In late October 2010, the court entered judgment in favor of El Cajon Ford, indicating it was entitled to costs and leaving a blank space for the amount to be awarded. Thereafter, the judgment was amended to include an award of costs, and next to the cost award the court interlineated an award of attorney fees in the amount of $173,365.50 pursuant to a February 10, 2011, order. No other record of the proceedings resulting in the attorney fees award in this FEHA action is included in the appellate record.

B. *Analysis*

In *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440 (*Vo*), the Court of Appeal explained that in actions brought under the FEHA, the trial court in its discretion may award reasonable attorney fees and costs to the prevailing party, and such an award is reviewed for abuse of discretion. (*Vo*, at p. 445.) The determination must be based upon a proper utilization of the lodestar method, which requires the trial court to determine a touchstone or lodestar figure based on a careful compilation of the time spent and reasonable hourly compensation for each attorney, and then to augment or diminish the touchstone figure by taking various relevant factors into account. (*Ibid.*)

The *Vo* court also explained that the party challenging a fee award under the provisions of the FEHA "has an affirmative obligation to provide an adequate record so that we may assess whether the trial court abused its discretion." (*Vo*, *supra*, 79 Cal.App.4th at p. 447.)

The California Supreme Court has stated that "[t]he 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it

17

is clearly wrong.' " (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49; accord, *Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 751.)

Here, the judgment indicates the court issued an order awarding attorney fees in favor of El Cajon Ford on February 10, 2011. However, that order is not included in the record, and Kidane has presented no other record of the proceedings that resulted in the challenged award. Accordingly, we conclude the award of attorney fees and other costs in this FEHA case must be affirmed because the record provided by Kidane is inadequate to permit meaningful review on appeal to determine whether the court abused its discretion. (See *Vo*, *supra*, 79 Cal.App.4th at p. 447.)

## DISPOSITION

The judgment is affirmed. El Cajon Ford shall recover its costs on appeal.


NARES, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.

18