[No. D038889. Fourth Dist., Div. One. Jan. 27, 2003.]

CRISTINA VASQUEZ, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

## COUNSEL

Law Offices of Robert Berke, Robert Berke, Joseph A. Pertel; Bahan & Herold, Della Bahan and Janet Herold for Plaintiff and Appellant.

McKeown Price, Francis M. McKeown and Thomas S. Clifton for Defendants and Respondents.

## OPINION

McCONNELL, J.—Plaintiff Cristina Vasquez appeals a judgment of dismissal entered after the court sustained without leave to amend the demurrer of defendants the State of California and Noreen Blonien (together the State when appropriate). We reverse the judgment and hold, as a matter of first impression, that a taxpayer action (Code Civ. Proc.,[1] § 526a) may be brought to compel the State to discharge its duty under Proposition 139, the Prison Inmate Labor Initiative of 1990, to require a private sector manufacturer's payment of *prevailing* wages to inmates, given the State's right to a percentage of inmates' wages to defray expenses of their room and board.

### FACTUAL AND PROCEDURAL BACKGROUND

A discussion of legal provisions is required to place the facts in context. In November 1990 the voters approved Proposition 139 (codified in Pen. Code, § 2717.1 et seq.), which requires the Director of Corrections (the Director) to "establish joint venture programs within state prison facilities to allow joint venture employers [private businesses] to employ inmates confined in the state prison system for the purpose of producing goods or services." (Pen. Code, § 2717.2.) The purposes of Proposition 139 are to (1) require inmates to "work as hard as the taxpayers who provide for their upkeep," (2) provide funds from which inmates can reimburse the State for a portion of their costs of incarceration, satisfy restitution fines and support their families, and (3) assist in inmates' rehabilitation and teach skills they may use after their release from prison. (Historical and Statutory Notes, 51B West's Ann. Pen. Code (2000 ed.) foll. § 2717.1, p. 223.)

Proposition 139 requires a private business to pay inmates compensation "comparable to wages [it] paid . . . to non-inmate employees performing similar work for that employer. If the joint venture employer does not employ such non-inmate employees in similar work, compensation shall be comparable to wages paid for work of a similar nature in the locality in which the work is to be performed" (prevailing wages). (Pen. Code, § 2717.8.)

An inmate's wages "shall be subject to deductions, as determined by the Director . . . , which shall not, in the aggregate, exceed 80 percent of gross wages and shall be limited to the following: ¶ (1) Federal, state and local

---

[1]Statutory references are to the Code of Civil Procedure unless otherwise specified.

taxes[;] [¶] (2) Reasonable charges for room and board . . .[;] [¶] (3) Any lawful restitution fine or contributions to any fund established by law to compensate the victims of crime of not more than 20 percent, but not less than 5 percent, of gross wages . . .[;] [and] [¶] (4) Allocations for support of family pursuant to state statute, court order, or agreement by the prisoner." (Pen. Code, § 2717.8.)

The Director is required to "prescribe by rules and regulations provisions governing the operation and implementation of joint venture programs, which shall be in furtherance of the findings and declarations" in Proposition 139. (Pen. Code, § 2717.3.) Under these regulations, the Director shall select a joint venture employer on the basis of its ability to further the purposes of Proposition 139. In making the determination, the Director shall consider certain factors, including the prospective employer's ability to provide inmates with the means of paying a portion of the cost of their room and board. (Cal. Code Regs., tit. 15, § 3481, subd. (a)(1).) Further, each joint venture agreement shall include the "comparable wages of job classifications as determined in cooperation with the Employment Development Department" (EDD). (Cal. Code Regs., tit. 15, § 3482, subd. (a)(3).) The Director has determined that "20% of the inmate's net wages after taxes shall be for costs of room and board which shall be remitted to the facility's account." (Cal. Code Regs., tit. 15, § 3483, subd. (d)(3).)

In February 1996 the Department of Corrections (the Department) entered into a joint venture agreement with CMT Blues, for its manufacture of clothing at the Richard J. Donovan Correctional Facility (Donovan). The Department is required to select inmates for work and oversee their participation, maintain the work premises and provide utilities, security and discipline. CMT Blues is required to provide raw materials, machinery and equipment. CMT Blues is also required to pay inmates "in accordance with [EDD] guidelines developed for this contract." The contract incorporates by reference EDD wage guidelines for silk screen painters, sewing machine operators and garment parts cutters.[2]

Under a separate agreement, CMT Blues leases from the State approximately 28,000 square feet of space at Donovan for $1,000 per month. The lease provides that either party may terminate the lease for a material breach, which includes the failure to comply with the joint venture agreement, e.g., the failure to pay inmates prevailing wages.

---

[2]The guidelines are not included in the appellate record.

Vasquez brought a taxpayer action under section 526a against the State.[3] Vasquez alleged that "through at least the Fall of 1997" inmates working for CMT Blues "were not paid any compensation . . . unless and until they had completed an initial unpaid period of at least thirty working days and, on occasion, sixty days," and "through the present" have not been paid prevailing wages. Vasquez alleged taxpayers have not received the benefits contemplated by Proposition 139, in that "[f]unds required to have been collected and disbursed [from inmates' pay] will not be disbursed . . . to the victims of crime, for family and child support of inmates [and] for the reimbursement for the costs of incarceration." Vasquez sought to compel the State to ensure CMT Blues' payment of prevailing wages to the inmates.

The State successfully demurred to the fourth amended complaint. The court determined a taxpayer action under section 526a requires the actual or threatened *expenditure* of funds, and may not be based on the State's failure to collect funds. The court also found the State's expenditures to implement Proposition 139 do not support a section 526a action because they are not illegal or wasteful. A judgment of dismissal was entered on January 3, 2002.

DISCUSSION

I

*Standard of Review*

■ In reviewing the propriety of the sustaining of a demurrer, the "court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] . . . The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) We review the court's ruling de novo. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501 [82 Cal.Rptr.2d 368].)

---

[3]Vasquez "is International Vice President for the Union of Needletrades, Industrial & Textile Employees," which was a plaintiff, but is not involved in this appeal. Vasquez named CMT Blues and several parties as defendants, but they are also not involved in this appeal. The taxpayer cause of action at issue is the ninth cause of action of Vasquez's fourth amended complaint, the only claim remaining against the State when it filed its demurrer.

## II

### *Section 526a*

#### A

■ The purpose of section 526a,[4] "which applies to citizen and corporate taxpayers alike, is to permit a large body of persons to challenge wasteful government action that otherwise would go unchallenged because of the standing requirement. [Citation.] . . . [A]lthough by its terms the statute applies to local governments, it has been judicially extended to all state and local agencies and officials. [Citations.]" (*Waste Management of Alameda County, Inc. v. County of Alameda* (2000) 79 Cal.App.4th 1223, 1240 [94 Cal.Rptr.2d 740] (*Waste Management*).) " '[T]he individual citizen must be able to take the initiative through taxpayers' suits to keep government accountable on the state as well as on the local level.' [Citation.]" (*Farley v. Cory* (1978) 78 Cal.App.3d 583, 589 [144 Cal.Rptr. 923] (*Farley*).)

■ The trial court relied on the following quote from Witkin: "The essence of a taxpayer action is an illegal or wasteful expenditure of public funds or damage to public property. It must involve an actual or threatened expenditure of public funds. General allegations, innuendo, and legal conclusions are not sufficient; rather, the plaintiff must cite specific facts and reasons for a belief that some illegal expenditure *or injury to the public fisc is occurring or will occur.*" (4 Witkin, Cal. Procedure (2002 supp.) Pleading, § 144, p. 39, citing *Waste Management, supra,* 79 Cal.App.4th at p. 1240, italics added.)

It is established that an action lies under section 526a not only to enjoin wasteful expenditures, but also to enforce the government's duty to collect funds due the State. " 'A taxpayer may sue a governmental body in a representative capacity in cases involving [its] . . . failure . . . to perform a duty specifically enjoined.' [Citation.] This well-established rule ensures that the California courts, by entertaining only those taxpayers' suits that seek to measure governmental performance against a legal standard, do not trespass into the domain of legislative or executive discretion. [Citations.] This rule similarly serves to prevent the courts from hearing complaints

---

[4]Section 526a provides in part: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein."

which seek relief that the courts cannot effectively render; the courts cannot formulate decrees that involve the exercise of indefinable discretion; their decrees can only restrict conduct that can be tested against legal standards. [Citations.]" (*Harman v. City and County of San Francisco* (1972) 7 Cal.3d 150, 160-161 [101 Cal.Rptr. 880, 496 P.2d 1248] (*Harman*), fn. omitted.)

In *Harman, supra,* 7 Cal.3d 150, the city's charter provided that " '[n]o sale [of vacated streets] other than a sale at public auction shall be authorized by the supervisors unless the sum offered shall be at least ninety percent of the preliminary appraisal of such property.' " (*Id.* at p. 164.) The taxpayer plaintiffs alleged the city violated the provision by selling vacated streets at 50 percent of their unencumbered fee value, and the failure to abide by the charter and collect increased revenues constituted a gift of public funds. The Supreme Court held the plaintiffs stated a cause of action under section 526a. (*Harman,* at pp. 160, fn. 1, 168-169.)

In *Farley, supra,* 78 Cal.App.3d 583, the taxpayer plaintiffs alleged the State Controller "failed properly to perform the duties of his office pursuant to the Unclaimed Property Law . . . in *allowing banking organizations* to deduct service charges and to cease payment of interest on dormant accounts which eventually 'escheat' to the state" (*id.* at p. 585, fn. omitted, italics added), and the "Controller's failure to perform his duties was to confer a gift of public funds on the banking organizations." (*Ibid.*) The plaintiffs "sought an order compelling the Controller to conduct an examination and audit of banking organizations with respect to funds subject to escheat, to collect unpaid funds with interest retroactively applied, to enjoin the banking organizations from terminating interest payments and imposing 'unreasonable' service charges, [and] to issue rules and regulations to prevent unlawful and abusive practices by the banking organizations." (*Id.* at pp. 585-586.)

The court held the plaintiffs stated a cause of action based on the Controller's *inaction.* The court noted that Code of Civil Procedure section 1560 (formerly Code Civ. Proc., § 1513) protects the State by declaring its ownership of unclaimed savings and similar deposits together with interest and dividends, and Government Code section 12418 commands the Controller to collect funds due the State. The court concluded "a California taxpayer has a justiciable interest in money belonging to the state. [Citation.] That holds true whether the money is in the treasury and about to be illegally spent or *whether the money is in the hands of a third person but belongs to the state. . . .* [¶] Underlying California's affirmative response to the question of taxpayers' standing is the confidence expressed in decisional law that governmental performance, commanded by statute, is measurable and thus amenable to judicial redress. [Citations.]" (*Farley, supra,* 78 Cal.App.3d at p. 589, italics added.)

The State asserts *Harman* and *Farley* are "easily distinguished" because they "involved spending for an illegal or inappropriate activity." (Boldface type omitted.) That is not so. As discussed, they concerned the government's failure to obtain the correct or full amount of funds due the State. The State also attempts to distinguish *Harman* and *Farley* on the ground it has unfettered *discretion* to allow CMT Blues to violate Proposition 139, and breach the joint venture agreement, by conducting its operation at Donovan without paying inmates prevailing wages. The State's position is without merit.

Among other purposes, Proposition 139 is intended to defray the costs of inmates' room and board. (Historical and Statutory Notes, 51B West's Ann. Pen. Code, *supra*, foll. § 2717.1, p. 223.) Under the Director's regulations, the State is entitled to 20 percent of inmate wages. Proposition 139 requires the joint venture employer's payment of prevailing wages to inmates, and in considering whether to enter into a joint venture agreement the Director is required to consider the prospective employer's ability to pay prevailing wages.

Contrary to the State's view, it cannot sit idly by while CMT Blues violates Proposition 139 and the express terms of the joint venture agreement. Indeed, under the Departments' operations manual "[t]he Assistant Director of the Joint Venture Program Unit . . . is responsible for ensuring the Department's compliance with the mandates and intent of" Proposition 139. The State has means of obtaining CMT Blues' compliance, or of ejecting it from the joint venture program absent compliance, and cannot ignore its duty to obtain compliance under the guise CMT Blues, not the State, is required to pay inmate wages.

The statutory underpinning of the State's duty to taxpayers to protect the public fisc is at least as compelling as in *Harman* and *Farley*. The State's conduct can be tested against legal standards, and the court may render an effective decree to obtain its compliance with Proposition 139. Vasquez stated a taxpayer cause of action under section 526a against the State, and the court erred by granting its demurrer and dismissing the fourth amended complaint.[5]

---

[5]The State asserts that should we reverse the judgment, "it takes little imagination to forecast the havoc that could be wreaked upon government activities." The State predicts, for instance, that "[p]olice departments that fail to enforce traffic laws at their discretion could be subject to injunction on the grounds that further spending on them constitutes 'waste.' " However, we have made clear that the State has no discretion to allow a joint venture employer to violate Proposition 139 and a joint venture agreement by failing to pay prevailing wages. Moreover, contrary to the State's assertion, our holding is not an "extension of the law

## B

The State contends the judgment should be affirmed as to Blonien because she is not a signatory to the joint venture agreement and "has no standing to enforce the agreement." We are unpersuaded.

Vasquez alleged on information and belief that Blonien "is, and at all times material herein was, the assistant director of the . . . Department . . . Joint Venture Program, located in Sacramento, California. . . . At all times relevant and material to this complaint, . . . Blonien was acting under the color of state law and pursuant to her authority as an assistant director with the [Department]." Under the Department's operations manual, the Assistant Director of the Joint Venture Program Unit is responsible for the Department's compliance with Proposition 139. A taxpayer action under section 526a may be brought against the government or "any officer thereof." Regardless of who signed the joint venture agreement on the State's behalf, Blonien is a proper party to Vasquez's suit.

### DISPOSITION

The judgment is reversed. Vasquez is awarded costs on appeal.

Benke, Acting P. J., and Nares, J., concurred.

---

[section 526a] that will be difficult to restrain." We are not expanding the scope of section 526a; we follow precedent in requiring the State to comply with its legally measurable duties.