Filed 12/26/14; Appendix not available electronically

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LOS ANGELES POLICE PROTECTIVE LEAGUE et al., | B251796 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC483052) |
| v. | |
| CITY OF LOS ANGELES et al., | |
| Defendants and Appellants, | |
| LA VOICE et al., | |
| Interveners and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Terry A. Green, Judge.  Reversed.

Michael N. Feuer, City Attorney, James P. Clark, Chief Deputy City Attorney, and Gerald M. Sato, Deputy City Attorney, for Defendants and Appellants.

ACLU Foundation of Southern California, Peter Bibring, Michael Kaufman and Lucero Chavez for Interveners and Appellants.

Richard Doyle, City Attorney (San Jose), Nora Frimann, Assistant City Attorney, and Elisa T. Tolention, Deputy City Attorney, for League of California Cities as Amicus Curiae on behalf of Defendants and Appellants.

Kamala D. Harris, Attorney General, Angela Sierra, Assistant Attorney General, Nancy A. Beninati and Anthony V. Seferian, Deputy Attorneys General, as Amicus Curiae on behalf of Defendants and Appellants.

Silver, Hadden, Silver, Wexler & Levine, Richard A. Levine and Brian Ross for Plaintiff and Respondent Los Angeles Protective League.

Judicial Watch, Inc., Sterling E. Norris and Paul J. Orfanedes for Plaintiff and Respondent Harold P. Sturgeon.

\* \* \* \* \* \*

Harold Sturgeon, a Los Angeles County taxpayer, and the Los Angeles Police Protective League (League), an association representing sworn peace officers, seek to invalidate the Los Angeles Police Department's policy regarding impounding vehicles, "Special Order 7." The special order seeks to implement Vehicle Code sections 14602.6 and 14607.6 and directs officers when to use those sections and other state statutes governing impounds.[1] We conclude that Special Order 7 is within the wide discretion of the police chief, and that neither Sturgeon nor the League has standing to challenge the chief's implementation of the state statutes. Because they lack standing to pursue this litigation, we reverse the judgment entered in favor of Sturgeon and the League.

### FACTS AND PROCEDURE

Two statutes governing unlicensed drivers are central to the parties' arguments in this case. Section 14602.6 allows a peace officer to impound a vehicle when the officer determines that a person was driving the vehicle without ever having been issued a driver's license. (§ 14602.6, subd. (a)(1) (section 14602.6(a)(1)).) And section 14607.6, subdivision (c)(1) provides: "If a driver is unable to produce a valid driver's license on the demand of a peace officer enforcing the provisions of this code, . . . the vehicle shall be impounded regardless of ownership, unless the peace officer is reasonably able, by

---

[1]    Undesignated statutory citations are to the Vehicle Code, unless otherwise indicated.

2

other means, to verify that the driver is properly licensed." The trial court concluded that Special Order 7 conflicted with these statutes and was therefore void.

### 1. *Special Order 7*

In Los Angeles, the Board of Police Commissioners (Board) is responsible for setting policies, and the police chief is responsible for implementing the Board's policies. On April 10, 2012, the Board approved Special Order 7, which instructed officers when to impound vehicles driven by unlicensed drivers. Special Order 7 limits an individual officer's discretion to decide whether a vehicle should be impounded because it sets forth criteria for when a vehicle should be impounded and when the vehicle should be released. In addition to setting forth criteria for impounding vehicles, the special order informed officers which statute to use as authority for the impoundment.

Special Order 7's purpose was to "establish[] procedures for impounding vehicles from unlicensed drivers, and drivers with suspended or revoked licenses . . . . In addition, this Order provide[d] guidance regarding the enforcement of VC Sections 22651(p) . . . and 14602.6(a)(1) . . . ." The order instructed officers when to use section 22651, subdivision (p) as impound authority and when to use section 14602.6 as impound authority. It instructed officers when to impound vehicles and when to release a vehicle in lieu of an impound. If the driver had suffered a prior misdemeanor conviction, Special Order 7 required an officer to document "that the vehicle is eligible for vehicle forfeiture as delineated in Section 14607.6 VC." Special Order 7 also described the community care-taking doctrine, which delineates constitutional principles relevant to impounding vehicles, and the special order implemented other statutes governing impounds not relevant to the parties' arguments. The lengthy order is attached as appendix A, *post*, at page 15.

After the implementation of Special Order 7, the number of vehicles impounded pursuant to section 14602.6(a)(1) decreased substantially. Although the City of Los Angeles (City) claims other factors may have influenced the decrease, it is undisputed that the number of vehicles impounded pursuant to section 14602.6(a)(1) decreased from 28,796 in 2011 to 16,242 in 2012.

## 2. Parties

The Los Angeles Police Department has approximately 10,000 sworn peace officers. The League is an employee organization representing police officers, detectives, sergeants and lieutenants employed by the City of Los Angeles. According to the League, it is the representative organization "with regard to all matters concerning wages, hours and work conditions."[2]

The League sued the City and Charlie Beck, the Chief of the Los Angeles Police Department. In its first amended complaint, the League sought a declaration that Special Order 7 conflicted with statutes governing unlicensed drivers. The League worried that peace officers could be liable for failing to enforce "mandatory law enforcement obligations under the California Vehicle Code respecting impoundment of vehicles driven by unlicensed drivers . . . ."

Respondent Harold Sturgeon is a resident and taxpayer in Los Angeles. Sturgeon sued the City, members of the Board in their official capacity and the chief of police of the Los Angeles Police Department in his official capacity. Sturgeon sought a declaration that Special Order 7 conflicted with sections 14602.6 and 14607.6. Sturgeon further sought to enjoin the LAPD from using taxpayer funds to enforce Special Order 7. Neither the League nor Sturgeon sought relief from any specific application of Special Order 7.

Appellants Coalition for Humane Immigrants Rights Los Angeles (Coalition) and LA Voice intervened with permission from the trial court. The Coalition is a membership-based organization focused on immigrant rights. LA Voice is the Los Angeles affiliate of People Improving Communities Through Organizing, an interfaith

---

[2] The League's description is consistent with Government Code section 3504, which provides that the scope of representation of a local public employee organization "shall include all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment, except, however, that the scope of representation shall not include consideration of the merits, necessity, or organization of any service or activity provided by law or executive order."

4

community organization which seeks to empower local communities to transform their neighborhoods and improve the quality of life for their residents. Interveners and the City are collectively referred to as appellants.

### 3. Judgment

The court overruled the City's demurrers challenging, among other things, Sturgeon and the League's standing. The parties filed cross-motions for summary judgment. The court concluded that Special Order 7 was preempted by section 21—the Vehicle Code's general preemption statute—and conflicted with section 14602.6 and 14607.6 and was void. The court permanently restrained the City and the Los Angeles Police Department from enforcing Special Order 7. This appeal followed, and this court granted appellants' petitions for writ of supersedeas and stayed enforcement of the judgment.

### DISCUSSION

We begin with the requirements for taxpayer standing. We then discuss separately Sturgeon's and the League's standing. As noted, we conclude neither party has standing to challenge Special Order 7.

### 1. Taxpayer Standing Requires More Than a Mistake in Exercising Discretion

Principles governing taxpayer standing are well established. "Code of Civil Procedure section 526a permits a taxpayer to bring an action to restrain or prevent an illegal expenditure of public money. No showing of special damage to a particular taxpayer is required as a requisite for bringing a taxpayer suit. [Citation.] Rather, taxpayer suits provide a general citizen remedy for controlling illegal governmental activity." (*Connerly v. State Personnel Bd.* (2001) 92 Cal.App.4th 16, 29.) A taxpayer suit "seeks preventative relief, to restrain an illegal expenditure." (*Ibid.*) Code of Civil Procedure section 526a should be liberally construed to achieve its remedial purpose. (*Blair v. Pitchess* (1971) 5 Cal.3d 258, 268, superseded by statute on another ground as explained in *Simms v. NPCK Enterprises, Inc.* (2003) 109 Cal.App.4th 233, 242.) Examples of authorized lawsuits include those alleging fraud, collusion, ultra vires

transaction, or the failure to perform mandatory duties. (*Harmon v. City and County of San Francisco* (1972) 7 Cal.3d 150, 160.)

Although Code of Civil Procedure section 526a must be broadly construed, it cannot be used to "trespass into the domain of legislative or executive discretion." (*Harmon v. City and County of San Francisco, supra*, 7 Cal.3d at p. 161.) In particular, courts have stressed that taxpayer standing should not be conferred when the taxpayer challenges "'political' issues or issues involving the exercise of the discretion of either the legislative or executive branches of government." (*Humane Society of the United States v. State Bd. of Equalization* (2007) 152 Cal.App.4th 349, 356.) "'"[T]he term 'waste' as used in section 526a means something more than an alleged mistake by public officials in matters involving the exercise of judgment or wide discretion. To hold otherwise would invite constant harassment of city and county officers by disgruntled citizens and could seriously hamper our representative form of government at the local level. Thus, the courts should not take judicial cognizance of disputes which are primarily political in nature, nor should they attempt to enjoin every expenditure which does not meet with a taxpayer's approval."'" (*Id.* at p. 357.) "Further, a taxpayer is not entitled to injunctive relief under Code of Civil Procedure section 526a where the real issue is a disagreement with the manner in which government has chosen to address a problem because a successful claim requires more than 'an alleged mistake by public officials in matters involving the exercise of judgment or wide discretion.'" (*Coshow v. City of Escondido* (2005) 132 Cal.App.4th 687, 714.) "'[C]ourts cannot formulate decrees that involve the exercise of indefinable discretion; their decrees can only restrict conduct that can be tested against legal standards.'" (*Vasquez v. State of California* (2003) 105 Cal.App.4th 849, 855.)

In *Sundance v. Municipal Court* (1986) 42 Cal.3d 1101 (*Sundance*), our high court considered challenges to the Los Angeles Police Department's "Special Order 23" and to then Penal Code section 647, subdivision (f), which governed persons found in a public

place under the influence of alcohol.[3]  Special Order 23 was promulgated to effectuate Penal Code section 849, subdivision (b)(2), which according to *Sundance* at the time allowed "a police officer to release an arrestee from custody if the arrest was made without a warrant and the arrestee 'was arrested for intoxication only, and no further proceedings are desirable.'"  (*Sundance*, at p. 1111.)  Special Order 23 "set forth a new policy," allowing release of arrestees after four hours absent a reason for denying release.  (*Ibid.*)  Special Order 23 provided:  "'For a number of years, this Department has cooperated in the efforts to establish local detoxification centers as a practical alternative to criminal prosecution of [Penal Code section 647, subdivision (f)] arrestees.  Until adequate facilities are available, this Department will necessarily continue to arrest and book public inebriates but will not seek prosecution, absent exigent circumstances. . . . [¶] 'An adult who is booked *only* for [section 647(f)] (Drunk) shall normally be released under [Penal Code section 849, subdivision (b)(2)] after a period of detoxification (minimum 4 hours) . . . ,'" unless an exception applied.  (*Id.* at p. 1133, fn. 19.)

Special Order 23 had the effect of greatly reducing the number of arrestees who were arraigned.  (*Sundance, supra*, 42 Cal.3d at p. 1133.)  The high court concluded that

---

**3**      Then Penal Code section 647, subdivision (f) provided "that every person who is 'found in any public place under the influence of intoxicating liquor . . . in such a condition that he or she is unable to exercise care for his or her own safety or the safety of others, or by reason of his or her being under the influence of intoxicating liquor . . . interferes with or obstructs or prevents the free use of any street, sidewalk, or other public way' is guilty of disorderly conduct, a misdemeanor.  However, public inebriates arrested under this provision can be diverted into treatment facilities as an alternative to criminal prosecution.  Under section 647([f]) '[w]hen a person has violated [section 647(f)], a peace officer, if he or she is reasonably able to do so, shall place the person, or cause him or her to be placed, in civil protective custody.  Such person shall be taken to a facility, designated pursuant to Section 5170 of the Welfare and Institutions Code, for the 72-hour treatment and evaluation of inebriates.  A peace officer may place a person in civil protective custody with that kind and degree of force which would be lawful were he or she effecting an arrest for a misdemeanor without a warrant.  No person who has been placed in civil protective custody shall thereafter be subject to any criminal prosecution or juvenile court proceeding based on the facts giving rise to such placement.'" (*Sundance, supra*, 42 Cal.3d at pp. 1108-1109, fn. omitted.)

the special order "simply provide[d] criteria for the decision whether to prosecute—a decision as to which the executive branch has been accorded wide discretion." (*Id*. at p. 1134.) The high court concluded that "'[Code of Civil Procedure] [s]ection 526a does not allow the judiciary to exercise a veto over the legislative branch of government merely because the judge may believe that the expenditures are unwise, that the results are not worth the expenditure, or that the underlying theory of the Legislature involves bad judgment.'" (*Id*. at p. 1138.)

## 2. *Sturgeon Fails to Demonstrate Anything More Than an Arguable Mistake in Exercising Discretion*

Sturgeon argues that his claim that Special Order 7 is illegal because it is preempted "takes his claim beyond a question of mere government discretion." According to him his "'illegality' claim does not implicate any discretionary acts by Defendants-Appellants. It is plainly justiciable." For reasons we shall explain, we disagree.

In *O'Connell v. City of Stockton* (2007) 41 Cal.4th 1061, 1065, a case heavily relied upon by Sturgeon, our high court considered a taxpayer lawsuit challenging a city's ordinance as preempted under section 21. The *O'Connell* majority held that an ordinance that allowed forfeiture of a vehicle used to commit specified crimes was preempted. (*O'Connell*, at p. 1074.) *O'Connell* supports Sturgeon's argument that a taxpayer may have standing to challenge an ordinance on preemption grounds. However, Sturgeon's assumption that the doctrine of preemption controls this case—as it did in *O'Connell*—lacks merit.

As Sturgeon argues, principles governing preemption are well established. "Local ordinances and regulations are subordinate to state law. (Cal. Const., art. XI, § 7.) Insofar as a local regulation conflicts with state law, it is preempted and invalid. [Citations.] ""A conflict exists if the local legislation "'*duplicates, contradicts*, or *enters an area fully occupied* by general law, either expressly or by legislative implication.'""" (*California Grocers Assn. v. City of Los Angeles* (2011) 52 Cal.4th 177, 188.)

8

Here, Special Order 7 implements state law; it does not create a new law. Use of police resources to enforce the Vehicle Code does not constitute waste. (*Thompson v. City of Petaluma* (2014) 231 Cal.App.4th 101, 108.) The doctrine of preemption does not apply to the police chief's implementation of state law because preemption requires the comparison of two separate laws to determine if one duplicates or conflicts with the other. In contrast to *O'Connell, supra*, 41 Cal.th 1061 and other cases relied on by the parties, here the police chief's order "provid[es] guidance regarding the enforcement" of the Vehicle Code. Although Sturgeon challenges the characterization of Special Order 7 as guidance, a close review of the order supports that conclusion. The order seeks to ensure uniform application of the Vehicle Code among the 10,000 sworn officers in Los Angeles. It accurately reports that several different statutes authorize impounding vehicles. It sets forth criteria for officers to use in selecting which statute to apply.

Setting such uniform criteria falls within the broad discretion of the police chief. City officials may set policies that are consistent with state law and constitutional standards. (*Long Beach Police Officers Assn. v. City of Long Beach* (1976) 61 Cal.App.3d 364, 371.) A chief of police may set policies for the City on police matters, and the Los Angeles chief of police is an "authorized policymaker on police matters." (*Larez v. Los Angeles* (9th Cir. 1991) 946 F.2d 630, 646-647.) Officers' discretionary decisions may be constrained by an authorized policymaker. (Cf. *St. Louis v. Praprotnik* (1988) 485 U.S. 112, 127.) As the United States Supreme Court has explained, """[a] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.""" (*Illinois v. Lafayette* (1983) 462 U.S. 640, 648.)

The police chief's discretion is not limited by section 21, which provides: "Except as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the state and in all counties and municipalities therein, and a local authority shall not enact or enforce any ordinance or resolution on the matters covered by this code, including ordinances or resolutions that establish regulations or procedures for, or assess a fine, penalty, assessment, or fee for a violation of, matters covered by this code, unless

9

expressly authorized by this code." (§ 21, subd. (a).) The chief's guidelines in Special Order 7 is consistent with section 21 because it helps ensure uniform application of the state's laws among the 10,000 sworn peace officers in Los Angeles.

Nor is the discretion afforded by section 14602.6—a statute central to Sturgeon's challenge—subject to dispute. Section 14602.6(a)(1) confers a discretionary authority to impound—not mandatory authority. In *California Highway Patrol v. Superior Court* (2008) 162 Cal.App.4th 1144, the court held that "section 14602.6, subdivision (a)(1) . . . provides only discretionary authority to impound . . . ." (*Id*. at p. 1148.) In looking at the legislative history, the court explained that "section 14602.6, as passed in 1994, actually gave a police officer *more* discretion in deciding whether to impound a vehicle." (*Id*. at p. 1152.) Prior to its passage, an officer could not impound a vehicle if a licensed driver were present. (*Ibid*.) When the statute was amended "the Legislature continued to give police officers full discretionary authority under 14602.6." (*Id*. at p. 1153.) Section 14602.6 has withstood constitutional challenges (*Alviso v. Sonoma County Sheriff's Dept*. (2010) 186 Cal.App.4th 198, 204), and its implementation is vested with the responsible public officials, not this court. Thus Sturgeon does not show that he has standing to challenge Special Order 7 on the ground that it is preempted by section 14602.6.

Sturgeon's argument that Special Order 7 is illegal because it is preempted by section 14607.6 also lacks merit.[4] Section 14607.6 requires impoundment when certain conditions are satisfied. (See § 15 [use of the term "shall" sets forth a mandatory requirement].) Special Order 7 implements section 14607.6 by requiring officers to report that a vehicle is subject to impoundment under section 14607.6 when a driver meets the criteria under that statute.

---

[4]      As previously noted, the statute provides in pertinent part: "If a driver is unable to produce a valid driver's license on the demand of a peace officer enforcing the provisions of this code, as required by subdivision (b) of Section 12951, the vehicle shall be impounded regardless of ownership, unless the peace officer is reasonably able, by other means, to verify that the driver is properly licensed." (§ 14607.6, subd. (c)(1).)

10

In sum, contrary to Sturgeon's allegations, Special Order 7 neither creates new law nor conflicts with existing law. It simply implements existing law, and as such is a matter within the wide discretion of public officials. Sturgeon fails to show that he has standing to challenge that discretion.

### 3. *The League Also Lacks Standing to Challenge Special Order 7*

The League argues it has standing to challenge Special Order 7 because its members are forced to choose between enforcing state law or complying with the order. As the League emphasizes it is undisputed that an individual officer could face discipline for failing to follow the special order. According to the League "subjecting such law enforcement employees to a[n] unlawful order concerning the discharge of their duties is a matter affecting a condition of employment, and thus within the scope of representation."

For the same reasons explained above with respect to Sturgeon's arguments, the League's argument that Special Order 7 conflicts with state law lacks merit. The League additionally argues that section 14602.6 vests discretion solely in the individual officer, and it cannot be limited by the police chief. The League relies on the italicized references to peace officer contained in the quoted section 14692.6: "Whenever a *peace officer* determines that a person was driving a vehicle while his or her driving privilege was suspended or revoked, . . . the *peace officer* may either immediately arrest that person and cause the removal and seizure of that vehicle or, if the vehicle is involved in a traffic collision, cause the removal and seizure of the vehicle without the necessity of arresting the person . . . ." (§ 14602.6(a)(1), italics added.)

The statutory language does not support the League's interpretation that an individual officer rather than the police chief has sole discretion to determine when impounding a vehicle is proper. The statute references the peace officer because the peace officer is the person who interacts with the driver. Neither the language of the statute nor its legislative history support the conclusion that the Legislature intended to remove a police chief's discretion in implementing statutes regulating the impoundment

11

of vehicles driven by unlicensed drivers.[5]  The League's allegations that Special Order 7 conflicts with state law are insufficient to confer standing because, as we have already observed, the allegations lack merit as a matter of law.

Once Special Order 7 is correctly characterized as the implementation of existing law, the League's concern that its members may violate state law by complying with the special order is no longer a basis for standing.  Just as with Sturgeon's claim of illegality, with respect to the League, there is no colorable conflict supporting standing.  Nor has the League demonstrated that the implementation of state law is a matter concerning wages, hours, or work conditions which delimits the scope of its representation.[6]  (See *Monterey/Santa Cruz etc. Trades Council v. Cypress Marina Heights LP* (2011) 191

---

[5]     The League argued that the history of section 14602.6, subdivision (a) reflected an effort to expand the authority of an individual peace officer to impound vehicles.  For example, the Legislative Counsel's Digest explained that "[e]xisting law allows a vehicle to be impounded when, among other things, the driving privilege of the driver has been suspended or revoked for specified offenses and there is no passenger in the vehicle who has a valid driver's license and authorization to operate the vehicle.  [¶]  This bill would expand the scope of specified offenses and would remove the restriction that there must be no passenger able to operate the vehicle before a vehicle may be impounded under the above circumstances.  This bill would specifically authorize a peace officer to immediately arrest any person who is driving a vehicle while his or her driving privilege is suspended or revoked or when the person is driving without ever having been issued a driver's license and to cause the removal and seizure of the vehicle.  The bill would provide for a 30-day impoundment on the vehicle subject to a hearing." (Legis. Counsel's Dig., Sen. Bill No. 1758 (1993-1994 Reg. Sess.), 5 Stats. 1994, Summary Dig., pp. 517-518.)

The summary by the Legislative Counsel relied upon by the League does not suggest the Legislature intended to limit a police chief's discretion in implementing the statute.

[6]     The League emphasizes that it was notified of Special Order 7 and argues this lawsuit does not concern meet and confer requirements.  The fact that the League was notified of Special Order 7 does not show it is a condition of employment.  Although the lawsuit does not concern meet and confer requirements for purposes of standing, the League must still show that it seeks to protect interests relevant to its purpose as an association.

Cal.App.4th 1500, 1521 [associational standing requires that interest association seeks to protect are relevant to its purpose].)

Finally, we find unpersuasive cases relied on by respondents to support their claimed standing because none discuss standing in the context of a police chief's implementation of existing statutes. In fact, most of the cases cited by the League to support its claim of standing do not discuss standing at all.

## DISPOSITION

This court's order staying judgment is dissolved. The judgment is reversed. The trial court is directed to vacate its order granting respondents' motion for summary judgment and enter a new order granting appellants' motion for summary judgment. The trial court is also directed to enter a new judgment in favor of appellants. Appellants shall have their costs on appeal.


FLIER, J.

WE CONCUR:


RUBIN, Acting P. J.


GRIMES, J.

13